UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TIMOTHY ADDISON MCCAMEY,

                Plaintiff,

   v.

SNOHOMISH COUNTY SHERIFF'S OFFICE, et al.,

                Defendants.

CASE NO. C19-699 RAJ-BAT

**REPORT AND RECOMMENDATION**

       Defendants (Snohomish County Sheriff's Office, Snohomish County Sheriff's Office – Corrections Bureau, and Classification Supervisor for Snohomish County Jail Kimberly Parker) move for summary judgment on *pro se* prisoner Timothy McCamey's 42 U.S.C. § 1983 civil-rights complaint. Dkt. 18. Mr. McCamey contends that defendants violated his First Amendment right to free exercise of religion and the Religious Land Use Institutionalized Persons Act ("RLUIPA") by declining to serve him Kosher meals upon his assertion that he would like to convert to Judaism. Dkts. 6, 10. He has not, however, filed a response to defendants' summary judgment motion. The Court recommends **GRANTING** defendants' unopposed motion for summary judgment.

REPORT AND RECOMMENDATION - 1

**BACKGROUND**

Mr. McCamey alleges that defendants have impinged on his right to practice his religion by denying him a Kosher diet while in jail. Dkt. 6, at 3. Mr. McCamey states:

> (Starting Jan 30th[,] 2019) I[']ve been denied a Kosher diet after specifically asking for one on my arrival here for a total of 99 days and counting.
>
> The fact is religious freedom is religious freedom[.] I can be Jewish today or atheist tonight. The point is that[']s my right as a US citizen.
>
> My sincere belief that I should eat Kosher and pray & be clean from defi[le]d foods is enough for this jail to allow such freedoms but Ms. Parker[] is denying these requests by defer[r]ing all action to an outside organization.
>
> The end result is I am commit[t]ing sin while the dept.[] here keep denying me my freedoms.

*Id.* (capitalization standardized). Earlier, the Court denied Mr. McCamey's motion for a permanent injunction because his allegations—that he desires Kosher meals while he seeks more information on converting to Judaism—were insufficient to demonstrate a likelihood of success on the claim that defendants violated his religious rights. Dkts. 14, 15. Defendants now move for summary judgment, attaching Mr. McCamey's kites regarding his requests for a Kosher diet and desire to convert to Judaism, as well as responses from the jail and Jewish Prisoner Services International ("JPSI"). Dkt. 19. Although given a *Rand* notice that failure to respond to a motion for summary judgment could jeopardize his lawsuit, Mr. McCamey did not file a response brief. Dkt. 20.

There is no dispute that Mr. McCamey has a history of shifting diet requests during his jail stays. For example, Mr. McCamey previously insisted that he was a Wiccan and therefore required a vegan diet in 2005 and 2007; later in 2007, he asked to discontinue the vegan diet but

REPORT AND RECOMMENDATION - 2

then requested it again during a 2011 incarceration; in January 2017, he stated he was "int[e]rested[] in learning the Catholic faith and becoming Kosher"; and in February 2017, Mr. McCamey asked that the jail "change [his] diet to the 'Buddhist Diet.'" Dkt. 19 ("Parker Decl.") ¶ 10; Parker Decl., Exh. H, at 2; Parker Decl., Exh. I, at 3. Mr. McCamey's most recent period of incarceration began when he was booked into the jail on January 30, 2019. Parker Decl. ¶ 4. At that time, he indicated that his religion was "other," not Judaism. *Id.* Mr. McCamey first requested a Kosher diet in a February 16, 2019 kite in which he asked:

> [H]ow do I go about getting converted into the Jewish faith and on the Kosher diet?
>
> Can I do this while in jail? Can I request the Kosher diet now?
>
> Please help me in my quest! My goal is to be a better man and with converting to Judaism I believe I will be on the right track.

Parker Decl. ¶ 4; Parker Decl., Exh. A, at 2. Classification Supervisor Ms. Parker responded that Mr. McCamey should contact a local synagogue upon release because the conversion process was complex and lengthy and the jail would approve Kosher diets only for those who practice the Jewish faith. Parker Decl., Exh. A, at 2. On February 21, 2019, Mr. McCamey submitted another kite in which he criticized Ms. Parker's response for hindering his ability to find and follow a religious belief and stated that if she continued to answer in place of religious authorities, he would file a lawsuit. Parker Decl., Exh. B, at 2.

On March 7, 2019, Ms. Parker advised Mr. McCamey that the jail approves Kosher diets only for those who practice the Jewish faith, informed him that the jail would consult with Jewish Prisoner Services International, and provided him with a JPSI intake form. Parker Decl. ¶ 6; Parker Decl., Exh. C. On March 21, 2019, JPSI responded by letter to Mr. McCamey. Parker

Decl., Exh. F. JPSI stated that Mr. McCamey did not qualify for its services and JPSI does not get involved with conversions. *Id.*, at 2. JPSI also stated:

> Please be aware that according to Jewish Code (Law), unless a non-Jew has been accepted into a formal conversion program, he should not keep mitzvos (commandments) as a Jew does as the commandments were given to the Jewish people only.

*Id.* Thereafter, Ms. Parker informed Mr. McCamey that he did not qualify for a Kosher diet. Parker Decl., Exh. G, at 2. There is no indication that Mr. McCamey is in a conversion program or is attempting to enroll in a conversion program. Parker Decl. ¶ 8. Neither the jail nor Ms. Parker has denied Mr. McCamey the ability to contact a rabbi or synagogue or to seek information regarding conversion to Judaism. Parker Decl. ¶ 9. Nonetheless, Mr. McCamey signed his federal civil-rights complaint claiming a violation of his religious rights on May 7, 2019. Dkt. 6, at 4.

## DISCUSSION

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party can do so by citing to particular parts of materials in the record, showing that the materials cited do not establish the presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1). If a party fails to properly address another party's assertion of fact as required by Rule 56(c), the Court may, among other things, consider the fact undisputed for purposes of the motion, and grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it. Fed. R. Civ. P. 56(e).

The Court finds that defendants have demonstrated there is no genuine dispute of material fact such that they are entitled to summary judgment on Mr. McCamey's claimed

REPORT AND RECOMMENDATION - 4

violations of the First Amendment and RLUIPA. Although Mr. McCamey has also named improper defendants— Snohomish County Sheriff's Office and Snohomish County Sheriff's Office – Corrections Bureau—any amendment of the complaint to substitute the proper defendant Snohomish County would be futile given no plausible violation of religious rights occurred. Because Mr. McCamey cannot demonstrate grounds for relief, the Court need not address qualified immunity.

### 1. First Amendment Free Exercise

In his complaint, Mr. McCamey argues that by denying him a Kosher diet defendants have unconstitutionally burdened his free exercise of religion. The Court disagrees.

To sustain a § 1983 action, a plaintiff must show (1) he or she suffered a violation of rights protected by the Constitution or federal law; and (2) the violation was proximately caused by a person acting under the color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). A defendant cannot be held liable under § 1983 solely on the basis of the individual's supervisory responsibility or position. *Monell v. Department of Social Servs. of City of New York*, 436 U.S. 658, 691–694 (1978). Although a municipality may not be held liable under a respondeat superior theory for the actions of its employee, it may be held liable for constitutional deprivations occasioned by its policy or custom. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). To merit protection under the First Amendment's Free Exercise Clause, a religious claim must satisfy two criteria: (1) it must be sincerely held in that "the First Amendment does not extend to 'so-called religions which ... are obviously shams and absurdities and whose members are patently devoid of religious sincerity'"; and (2) it must be rooted in religious belief, not in purely secular, philosophical considerations. *Callahan v. Woods*, 658 F.2d 679, 683 (9th Cir. 1981) (quoting *Theriault v. Carlson*, 495 F.2d 390, 395 (5th Cir. 1974), and citing *Wisconsin*


*v. Yoder*, 406 U.S. 205, 215 (1972)); *see Shakur v. Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008); *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994).

Defendants have demonstrated that Mr. McCamey's desire to be served Kosher meals is neither sincerely held nor based on a belief in Judaism. It is undisputed that Mr. McCamey does not profess to be Jewish, has not initiated the process of converting to Judaism, and received the opinion of Jewish Prisoner Services International that he does not qualify for its services and should not, as a non-Jew, follow the Jewish mitzvos. Mr. McCamey's demand that he be served a Kosher meal while he explores becoming Jewish does not qualify as a sincerely held belief rooted in religion. Rather he is expressing a secular, philosophical position that it *doesn't matter* what religion he professes—"I can be Jewish today or atheist tonight, the point is that[']s my right as a US citizen"—and that a "sincere belief that I should eat Kosher . . . is enough to allow such freedoms." Dkt. 6, at 3. According to JPSI, Mr. McCamey, as a non-Jew, should *not* seek to follow Jewish traditions such as eating Kosher meals. Yet that is exactly what Mr. McCamey, who avowedly is currently *not* a Jew, seeks to do. Mr. McCamey argues that whether to serve him Kosher meals cannot be "defer[red] . . . to an outside [Jewish] organization" but instead should be "the [non-Jewish] chaplain[']s job." Dkt. 6, at 3–4. Thus, Mr. McCamey appears to have an *insincere disbelief* in Judaism: he believes he should be served Kosher meals regardless of what Jewish law decrees.

Defendants have demonstrated they are entitled to summary judgment on Mr. McCamey's claimed violation of his constitutional right to free exercise of religion. *See, e.g.*, *Mahone v. Pierce County*, 2011 WL 2360354, at *6–*10 (W.D. Wash. May 24, 2011).

REPORT AND RECOMMENDATION - 6

**2. RLUIPA**

Mr. McCamey contends that by denying him Kosher meals defendants have violated RLUIPA. The Court disagrees.

RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability," unless the government demonstrates the burden is "in furtherance of a compelling government interest" and "is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a); *Walker v. Beard*, 789 F.3d 1125, 1134 (9th Cir. 2015). To state a claim under RLUIPA, a prisoner must show: (1) he or she takes part in a "religious exercise," and (2) the government's actions have substantially burdened that exercise. *Walker*, 789 F.3d at 1134.

Mr. McCamey cannot show the first element of a RLUIPA claim, that he takes part in a "religious exercise." The undisputed facts show that Mr. McCamey is not Jewish and has not indicated that he is taking any steps to affiliate with a rabbi or a synagogue in efforts to enter a conversion program. He is therefore not participating in a "religious exercise" by expressing an interest in eating Kosher meals. Moreover, Mr. McCamey's history of shifting diet requests over the years—from Wiccan/vegan to "Buddhist Diet" to Catholic/Kosher to Jewish/Kosher—suggests that his current diet request is "not the result of [his] religious convictions but rather [his] secular predilections." *Mahone*, 2011 WL 2360354, at *9.

Defendants have demonstrated they are entitled to summary judgment on Mr. McCamey's claimed violation of RLUIPA.

### 3. Qualified Immunity

Defendant Ms. Parker moves for summary judgment on the grounds that she is entitled to qualified immunity. Because the Court finds that Mr. McCamey has failed to raise a genuine issue of material fact that his constitutional rights have been violated, this issue need not be addressed.

### 4. Improper Defendants

In a legal action involving the county, the plaintiff must name the county itself as a party rather than the municipal department or facility where the alleged violation occurred. Fed. R. 17(b) ("Capacity to sue or be sued is determined . . . by the law of the state where the court is located . . . ."); *Nolan v. Snohomish County*, 802 P.2d 792, 795–96 (Wash. Ct. App. 1990) (in a legal action involving the county, the county itself is the only legal entity capable of suing and being sued). Defendants Snohomish County Sheriff's Office and Snohomish County Sheriff's Office – Corrections Bureau are therefore not proper defendants in this lawsuit. Any amendment to name the county would be futile, however, because Mr. McCamey has shown no substantive violation of the First Amendment or RLUIPA and because he has suggested no basis for municipal liability based on policy or custom.

### 5. 28 U.S.C. § 1915(g)

Defendants request that the Court impose a "strike" pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915(g), because Mr. McCamey's lawsuit is frivolous. A case is "frivolous" if it is "of little weight or importance: having no basis in law or fact." *Andrews v. King*, 398 F.3d 1113, 1121 (9th Cir. 2005) (quoting Webster's Third New International Dictionary 913 (1993)).

The Court does not recommend assessing a strike pursuant to § 1915(g). Although this case is dangerously close to being frivolous, a *pro se* litigant could plausibly, though erroneously, presume that his desire to explore Judaism might afford him the dietary accommodation of Kosher meals. Mr. McCamey is forewarned, however: a future attempt to invoke similar reasoning in support of receiving a religious diet may demonstrate not only frivolousness but also maliciousness. *See* 28 U.S.C. § 1915(g).

## OBJECTIONS AND APPEAL

This Report and Recommendation is not an appealable order. Therefore, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge enters a judgment in the case.

Objections, however, may be filed and served upon all parties no later than **October 21, 2019.** The Clerk should note the matter for **October 25, 2019**, as ready for the District Judge's consideration if no objection is filed. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. The matter will then be ready for the Court's consideration on the date the response is due. Objections and responses shall not exceed **12 pages**. The failure to timely object may affect the right to appeal.

DATED this 27th day of September, 2019.

_____
BRIAN A. TSUCHIDA
Chief United States Magistrate Judge

REPORT AND RECOMMENDATION - 9